**UNITED STATES of America,**
**Plaintiff,**

v.

**EIN CHEMICAL CORPORATION, Max Ein Minerals Corporation and Max M. Ein, Defendants.**

United States District Court
S. D. New York.
April 17, 1958.

Paul W. Williams, U. S. Atty., Southern District of New York, New York City, Gerard L. Goettel, Asst. U. S. Atty., New York City, of counsel, for plaintiff.

Benjamin Barondess, New York City, for defendants.

FREDERICK van PELT BRYAN, District Judge.

The plaintiff United States moves on various grounds, pursuant to Rule 12 (b) and (f), Fed.Rules Civ.Proc., 28 U.S. C.A., to strike from the answer of the corporate defendants a separate defense, two counterclaims and a set-off and counterclaim.

The action arises out of alleged overpayments made to defendants by the Economic Cooperation Administration in 1950–1951 for sulphur supplied by defendants to France under the Foreign Aid Acts by way of economic assistance, 22 U.S.C.A. § 1501 et seq.

According to the allegations of the amended complaint the payments made by the Economic Cooperation Administration to the defendants for the sulphur supplied to France were made directly by that agency in dollars because defendants would not supply sulphur against payment in local currencies. Under the regulations of that agency defendants were required to submit signed statements certifying that the prices and other terms of the shipments were in compliance with the statutes and with the agency regulations. Regulation No. 1 of the Economic Cooperation Administration, amended May 3, 1949, 14 F.R. 2166, § 201.19(d) and § 201.22(d) (3), promulgated pursuant to 22 U.S.C.A. § 1503(f) (Repealed August 26, 1954, 68 Stat. 861), required that payment to an exporter should not exceed any one of the following ceilings: (a) The exporter's contract price to his customer; (b) The export market price prevailing in the United States at the time; (c) The domestic price prevailing in the United States at the time, plus the normal export mark-up, and (d) The price charged by the exporter to other customers in comparable sales.

The complaint alleges that the statements certified by defendants on their applications for payment falsely stated that the prices and terms complied with the statute and regulations, whereas, in fact, the prices charged were in excess of those permitted, that such overcharges as disclosed by post-audit amounted to $182,476.50 over the prescribed ceilings, and that defendant, after demand, paid only $26,000 on account of this sum, leaving a balance of $156,476.50 due.

There are two causes of action. The first contains three "counts" which proceed respectively upon the theories that (a) defendants by obtaining overpayments for the sulphur from the Government by means of these false certificates thereby became obligated pursuant to the statute, regulations and the terms of the certificates to repay such overpayments to the Government, (b) that the overpayments were a breach of the agreement between the parties governing these transactions, and (c) that the overpayments were made by mistake, induced by defendants' misrepresentations. The Government seeks to recover on this cause of action the balance of such overpayments in the sum of $156,476.50 alleged to be due.

The second cause of action is brought under the False Claims Act, 31 U.S.C.A. §§ 231–233. It alleges that the overpayments were induced by false, fraudulent or fictitious claims or certificates made by defendants to the Economic Cooperation Administration. It seeks penalties of $2,000 for each false claim and certificate submitted and double the amount of damages sustained by the Government therefrom in the total sum of $386,935.

The answer of the corporate defendants, after denying any wrongdoing or that they received any overpayments,

sets up four defenses, two counterclaims, and one set-off and counterclaim on behalf of defendant Ein Chemical only, and, in addition, one complete and one partial defense based on the statute of limitations. The present motion is directed only against the first and second counterclaims, the fourth defense and the set-off and counterclaim. Since the first counterclaim bases the relief it seeks upon the allegations of the first three defenses, it will be dealt with first.

### The First Counterclaim

The first counterclaim seeks
"a judgment declaring the rights of the parties; more specifically declaring and adjudging that the Act of Congress and the regulation of the Administrator set forth in the complaint were and are as to the defendants in this action invalid and unconstitutional."

This prayer for relief is based entirely upon the allegations of the first, second and third defenses which are incorporated in the counterclaim by reference.

The first defense alleges that the corporate defendants are middlemen and that Regulation No. 1 of the Economic Cooperation Administration, relied on in the complaint, as applied to them necessarily excluded them and other small businesses in similar position from participating in the Foreign Aid Program. It is asserted that the Regulation is invalid and void because it violates the policy of Congress as laid down in § 1510(i) (1) of Title 22 U.S.C.A. by which the administrator was directed to assist small business to participate equitably in the furnishing of commodities and services provided under the program.

The second defense alleges that the statute and regulations relied on in the complaint compel defendants to sell sulphur to foreign importers at cost to them and thus precludes them from acting as middlemen in such sales, whereas it permits producers and suppliers of sulphur to make such sales at a profit. It is asserted that defendants as one

class of citizens are thus penalized for doing what other citizens are permitted to do and that defendants are thereby deprived of their privileges and immuities as citizens in violation of Article IV, Section 2 of the Constitution.

The third defense alleges that 1, on the same facts, the statute and regulations relied on in the complaint deprive defendants of their property without due process of law and take their property for public use without just compensation in violation of the Fifth Amendment to the Constitution.

Thus, the first counterclaim proceeds upon the theory (a) that Regulation 1 of the administrator is invalid as in violation of the statute, and (b) that the statute is void as in violation of the Constitution and seeks a declaratory judgment to this effect.

The Government asserts that the court has no jurisdiction over the subject matter of the counterclaim and that it must be dismissed for want of jurisdiction. It also urges that the counterclaim should be stricken for redundancy since it merely repeats matters of defense already fully and adequately raised by the first three defenses.

It is fundamental that the United States cannot be sued without its consent. Panella v. United States, 2 Cir., 216 F.2d 622; Munro v. United States, 303 U.S. 36, 58 S.Ct. 421, 82 L. Ed. 633. This is equally true whether the claim is asserted in the form of an original action or as a counterclaim. United States v. Shaw, 309 U.S. 495, 60 S.Ct. 659, 84 L.Ed. 888; United States v. U. S. Fidelity & Guaranty Co., 309 U.S. 506, 60 S.Ct. 653, 84 L.Ed. 894; Nassau Smelting & Refining Works v. United States, 266 U.S. 101, 45 S.Ct. 25, 69 L.Ed. 190; Illinois Central R. Co. v. Public Utilities Commission, 245 U.S. 493, 38 S.Ct. 170, 62 L.Ed. 425; United States v. Patterson, 5 Cir., 206 F.2d 345, 348; United States v. Davidson, 5 Cir., 139 F.2d 908; United States v. Merchants Transfer & Storage Co., 9 Cir., 144 F.2d 324. Thus, the test is whether

defendants could have maintained an original action for a declaratory judgment upon the allegations of the first counterclaim. In re Greenstreet, Inc., 7 Cir., 209 F.2d 660; United States v. Patterson, supra.

■ The Declaratory Judgments Act, 28 U.S.C. §§ 2201–2202, under which suits for declaratory judgments in the Federal Courts must be brought, is essentially a procedural statute. Aetna Life Ins. Co. of Hartford, Conn. v. Haworth, 300 U.S. 227, 240, 57 S.Ct. 461, 81 L.Ed. 617, 108 A.L.R. 1000. It does not create new substantive rights but merely grants an additional remedy where jurisdiction already exists. Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194.

Neither by the Declaratory Judgments Act nor otherwise has the United States given its consent to be sued in an action of the character of this counterclaim. Stout v. United States, 2 Cir., 229 F.2d 918; Di Benedetto v. Morgenthau, 80 U.S.App.D.C. 34, 148 F.2d 223, petition for certiorari dismissed 326 U.S. 686, 66 S.Ct. 25, 90 L.Ed. 402; Love v. United States, 8 Cir., 108 F.2d 43, certiorari denied 309 U.S. 673, 60 S.Ct. 716, 84 L. Ed. 1018; Gibson v. United States, 6 Cir., 161 F.2d 973.

■ Questions of the invalidity of regulations or the unconstitutionality of statutes may be raised against the Government by way of defense, as has been done here in the first three defenses. They may also be raised by an action against the officers of the Government who seek to enforce as against the party aggrieved the regulations or statutes claimed to be invalid or void.

But in the latter case the action is not considered to be against the sovereign or an invasion of its immunity to suit. The conduct against which specific relief is sought is alleged to be beyond the officer's powers and therefore his conduct and not that of the sovereign. Cf. Larson v. Domestic & Foreign Commerce Corp., 337 U.S. 682, 690, 69 S.Ct. 1457, 93 L.Ed. 1628. This is true of ac-

tions for a declaratory judgment where suitable circumstances exist, as well as actions for an injunction or other relief. Indeed, as Mr. Justice Frankfurter stated in Colegrove v. Green, 328 U.S. 549, 552, 66 S.Ct. 1198, 1199, 90 L.Ed. 1432:

" * * * The Declaratory Judgment Act 'only provided a new form of procedure for the adjudication of rights in conformity' with 'established equitable principles.' Great Lakes Dredge & Dock Co. v. Huffman, 319 U.S. 293, 300, 63 S.Ct. 1070, 1074, 87 L.Ed. 1407. And so, the test for determining whether a federal court has authority to make a declaration such as is here asked, is whether the controversy 'would be justiciable in this Court if presented in a suit for injunction * * *.' Nashville, C. & St. L. Ry. v. Wallace, 288 U.S. 249, 262, 53 S.Ct. 345, 348, 77 L.Ed. 730."

■ It is well settled that unless expressly permitted by act of Congress no injunction can be granted against the United States and there is no jurisdiction in the Federal Courts to entertain an action for such relief. Belknap v. Schild, 161 U.S. 10, 16, 16 S.Ct. 443, 40 L.Ed. 599; United States v. McLemore, 4 How. 286, 11 L.Ed. 977; Hill v. United States, 9 How. 386, 13 L.Ed. 185; United States v. Patterson, supra; McAvoy v. United States, 2 Cir., 178 F.2d 353. Defendants point to no act of Congress which permits an injunction suit or a declaratory judgment suit against the United States on the controversy posed by the allegations of the first counterclaim and I know of none.

■ Thus the court has no jurisdiction over the subject matter of this counterclaim. While it is therefore unnecessary to pass on the Government's contention that the counterclaim should be stricken as redundant, the redundancy complained of illustrates the error of defendants' view that they must seek a remedy by way of declaratory judgment in addition to the defenses interposed. The issues as to alleged invalidity and

unconstitutionality raised by the first three defenses furnish ample basis for adjudication of these questions and there is no need in any event for a counterclaim to the same effect, even were it permitted.

The first counterclaim is therefore dismissed for want of jurisdiction. In so doing, however, I do not reach the substantive questions raised by that counterclaim or the first three defenses and have made no attempt to pass upon them.

### The Fourth Defense

■ The fourth defense alleges in substance that the Government, acting through its agencies, made claims upon the defendants for alleged overpayment of some $220,000, and upon the rejection of such demands coerced the defendants, through duress, into entering into an agreement by which they agreed to pay the aggregate sum of $80,955 in compromise of these claims at the rate of $2,000 per month, of which defendant Ein Chemical Corporation paid a total of $26,000. The duress and coercion is alleged to have consisted of threats that no further export licenses would be issued to defendants, causing export licenses to be withheld or cancelled, threatening defendants' suppliers of sulphur with dire consequences if they did not discontinue the sale of sulphur to defendants, causing defendants' suppliers to cease making sales of sulphur to defendants, and to withhold deliveries, and threatening defendants with refusal to pay for any further shipments of sulphur, with commercial ruin, with civil action and with criminal prosecution unless they meet the Government's demands. It asserts all of these acts were illegal and wrongful and that "by reason of the foregoing, said agreement of compromise was and is void and defendant Ein Chemical Corporation is entitled to recover said sum of $26,000 and accrued interest from the plaintiff."

The position of the Government that the Fourth Defense does not allege a defense to the causes of action pleaded in the complaint but an affirmative claim to be asserted, if it can be asserted at all, by way of counterclaim is well taken. The defense relates to an agreement entirely separate from that alleged in the complaint upon which the Government does not rely. The sum of $26,000 which defendant Ein Chemical claims it "is entitled to recover" from the plaintiff is already credited to the defendants in the complaint which affirmatively alleges the payment of this sum.

The theory of the defense is that defendants entered into the compromise agreement under duress, it is therefore void and they should recover the sums paid under such circumstances from the plaintiff. This is plainly not a defense to the causes of action asserted in the complaint based upon alleged overpayments to defendants by the Government but an affirmative claim against the Government based on an entirely different cause of action.

Nor does the duress asserted furnish any defense to plaintiff's claim. It is an element of defendants' alleged cause of action against plaintiff.

Were it not for the fact that the allegations of the fourth defense are made the subject of the second counterclaim and the set-off and counterclaim, the fact that these paragraphs are labeled as a "defense" might be deemed a misnomer, the paragraphs regarded as a counterclaim under Rule 8(c), F.R.C.P., and the pleading could be treated "as if there had been a proper designation." But there is no need to do this since all of the matter in the defense is also set up by way of counterclaim.

The fourth defense will therefore be stricken.

### The Second Counterclaim

■ This counterclaim realleges both the allegations of the third defense claiming that the regulation and statute violate the Fifth Amendment and the allegations of the fourth defense which have just been discussed. The counterclaim seeks a judgment "decreeing that the contract of compromise, entered into between the plaintiff and the corporate

defendants, is and always was null and void."

This is plainly a counterclaim for a declaratory judgment against the United States apparently upon the dual basis that the regulation and statute are unconstitutional and void and that the compromise agreement was induced by duress. It seeks no relief by way of money judgment as does the set-off and counterclaim based upon the same allegations of duress.

This court has no jurisdiction to entertain this counterclaim for a declaratory judgment against the United States for the reasons similar to those stated in the discussion of the first counterclaim. The second counterclaim will therefore be dismissed for want of jurisdiction of the subject matter.

#### The Set-Off and Counterclaim

In the "set-off and counterclaim" by defendant Ein Chemical the allegations of the third and fourth defenses, which had been realleged in the second counterclaim, are again realleged. It is then alleged that Ein Chemical is therefore entitled to set off the $26,000 paid under the compromise agreement against the plaintiff's cause of action and is also entitled to recover this sum from the plaintiff. Judgment is sought "awarding the defendants a credit against any recovery by plaintiff of $26,000 and accrued interest; and also a recovery by them against plaintiff of said sum with interest."

The Government urges that this set-off and counterclaim should also be dismissed for want of jurisdiction of the subject matter. It argues that the cause of action asserted is not one of those upon which the Government has given its assent to be sued under the Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2680, or otherwise, and that therefore the counterclaim cannot be maintained.

The Tort Claims Act, 28 U.S.C. § 1346 (b), provides that the United States District Courts shall have exclusive jurisdiction of civil actions on claims against the United States for money damages "for injury or loss of property * * caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."

In Hatahley v. United States, 351 U.S. 173, at page 180, 76 S.Ct. 745, at page 751, 100 L.Ed. 1065, the Supreme Court held that under appropriate circumstances the Government was liable under the Tort Claims Act "for wrongful and tortious acts of its employees committed in an attempt to enforce a federal statute which they administer."

There Government agents, acting to enforce the Taylor Grazing Act, 43 U.S. C.A. § 315 et seq., wrongfully seized and destroyed or sold a large number of horses and burros owned by the plaintiffs who were Indians, claiming that this stock was unlawfully grazing on a federal range. The court held that the Government was liable for these tortious acts in the nature of trespass and affirmed a recovery against the Government for the wrongs so committed. It stated, 351 U.S. at page 180, 76 S.Ct. at page 751:

"* * * It is clear that the federal agents here were acting within the scope of their employment under both state and federal law. Under the law of Utah an employer is liable to third persons for the willful torts of his employees if the acts are committed in furtherance of the employer's interests or if the use of force could have been contemplated in the employment. Cf. Barney v. Jewel Tea Co., 104 Utah 292, 139 P.2d 878. Both of these conditions obtained here. The federal agents were attempting to enforce the federal range law, and such enforcement must contemplate at least the force used in removal of stock from the range. The fact that the agents

did not have actual authority for the procedure they employed does not affect liability. There is an area, albeit a narrow one, in which a government agent, like a private agent, can act beyond his actual authority and yet within the scope of his employment. We note also that § 1346 (b) provides for liability for 'wrongful' as well as 'negligent' acts. In an earlier case the Court has pointed out that the addition of this word was intended to include situations like this involving ' "trespasses" which might not be considered strictly negligent.' Dalehite v. United States, 346 U.S. 15, 45, 73 S.Ct. 956, 972, 97 L.Ed. 1427."

The set-off and counterclaim under consideration in the case at bar also sets forth a cause of action for the alleged wrongful and tortious conduct of Government agencies and employees.

The conduct charged here is the enforcement by duress of an allegedly baseless claim by the Government against these defendants resulting in payments by them to the Government to which it was not entitled.

It is well settled that a tort action in conversion will lie where money or other property is wrongfully obtained from another by duress, and this is so whether the money was paid under an agreement induced by the duress or directly without agreement. Foshay v. Ferguson, 5 Hill, N.Y., 154; Flamm v. Noble, 296 N.Y. 262, 267–268, 72 N.E.2d 886, 171 A.L.R. 812; Gordon v. Hostetter, 37 N.Y. 99; Kelsey v. Bank of Mansfield, 85 App.Div. 334, 83 N.Y.S. 281; Restatement, Torts, § 871(f).

Duress is defined in Brown v. Pierce, 7 Wall. 205, 214, 74 U.S. 205, 214, 19 L.Ed. 134, as follows:

"Duress, in its more extended sense, means that degree of constraint or danger, either actually inflicted or threatened and impending, which is sufficient, in severity or in apprehension, to overcome the mind and will of a person of ordinary firmness."

The court goes on to say (7 Wall. at page 215), citing Foshay v. Ferguson, supra, that, under the more liberal rule,

"* * * contracts procured by threats of battery to the person or the destruction of property, may be avoided on the ground of duress, because in such a case there is nothing but the form of a contract, without the substance."

See, also, French v. Shoemaker, 14 Wall. 314, 333, 81 U.S. 314, 333, 20 L. Ed. 852, United States v. Huckabee, 16 Wall. 414, 432, 83 U.S. 414, 432, 21 L. Ed. 457, both citing with approval Foshay v. Ferguson, supra.

It cannot be said here that the allegations of the set-off and counterclaim on their face fail to set forth a cause of action in tort for the recovery of money paid under duress. If the allegations of the counterclaim be taken in sum it is plain that they allege a course of conduct by agents and employees of the Government which might well be sufficient "in severity or in apprehension to overcome the mind and will of a person of ordinary firmness." Brown v. Pierce, supra. The various threats and acts, alleged to be illegal and without color of right, are claimed to have coerced defendants into entering the compromise agreement and paying $26,000. to the Government thereunder to which the Government had no just claim.

Such a cause of action seems to me to be as much authorized by the Federal Tort Claims Act as was the cause of action which the Supreme Court enforced in Hatahley v. United States, supra, unless it is one of the causes of action expressly excluded from the purview of the Act by 28 U.S.C. § 2680(h), as the Government contends.

28 U.S.C. § 2680(h) excludes from the act

"Any claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse

of process, libel, slander, misrepresentation, deceit, or interference with contract rights."

The Government urges that the cause of action pleaded here is one for interference with contract rights and therefore within the express exclusions of § 2680(h). It has mistaken the nature of the cause of action.

The duress by which defendants allege they were coerced into entering the compromise agreement and paying the $26,000 consists of a variety of acts and threats to act or withhold action. Some of these threats or acts might form the basis for separate actions for damages based upon specific torts which are excluded under Section 2680(h). No such causes of action are asserted here nor are the essential elements of such torts pleaded.

■ The tort denominated as "interference with contract rights" gives rise to a separate and distinct cause of action with its own well recognized elements and limitations. Campbell v. Gates, 236 N.Y. 457, 141 N.E. 914; Lamb v. S. Cheney & Son, 227 N.Y. 418, 125 N.E. 817; Posner Co. v. Jackson, 223 N.Y. 325, 119 N.E. 573; Gonzales v. Kentucky Derby Co., 197 App.Div. 277, 189 N.Y.S. 783; Restatement, Torts, § 766; Prosser on Torts (2d ed.), p. 722, et seq. But to say that some of the acts complained of might give rise to such an unalleged cause of action, is not to say that plaintiff is barred from maintaining a cause of action based upon the entirely different theory of conversion which is not within the area of interdiction. Cf. Nicholson v. United States, 5 Cir., 177 F.2d 768.

Such cases as Fletcher v. Veterans Administration, D.C.E.D.Mich., 103 F. Supp. 654, Builders Corporation of America v. United States, D.C.N.D.Cal., 148 F.Supp. 482, and United States v. United States Tin Corp., D.C.Alaska, 148 F.Supp. 922, relied upon by the Government, go no farther than to hold that an action for the particular kind of tort described as "interference with contract rights" is excluded from the purview of the Tort Claims Act by Section 2680 (h) and may not be maintained. They do not hold that one who is coerced into entering into an agreement by duress which may have consisted of acts or threats by Government agents of assault, false imprisonment, false arrest, malicious prosecution, or interference with contract rights, among other things, is precluded from bringing a tort action in conversion to recover monies paid to the Government under such agreement because he is barred from bringing actions based on these specific torts.

Nor can it be said that Subdivision (a) of 28 U.S.C. § 2680 necessarily bars liability here. This section excludes from the purview of Section 1346(b)

"Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused."

It does not appear from the face of the complaint that the cause of action pleaded falls within the exclusions of § 2680 (a). See Hatahley v. United States, supra, 351 U.S. at page 181, 76 S.Ct. at page 751; Dahlstrom v. United States, 8 Cir., 228 F.2d 819; Eastern Air Line v. Union Trust Co., 95 U.S.App.D.C. 189, 221 F.2d 62, affirmed United States v. Union Trust Co., 350 U.S. 907, 76 S.Ct. 192, 100 L.Ed. 796; Bulloch v. United States, D.C.Utah, 133 F.Supp. 885. Whether or not the facts show that it does is a matter for determination at trial.

■ I therefore hold that, since the Government has given its consent to be sued upon the cause of action alleged, the claim may be asserted as a counterclaim against it in this action and this court has jurisdiction over the subject matter.

One further point should be mentioned. The $26,000 which defendants seek to set off against the Government's recovery has already been credited by the Government against any amounts which are alleged to be due from them. Thus, there is nothing for the defendants to set off against the claim alleged in the complaint, and the claim of set-off is stricken.

The motion of the Government, in so far as it seeks to dismiss the counterclaim contained in the "set-off and counterclaim" is denied and in all other respects is granted.

Settle order on notice.