**BUILDERS CORPORATION OF AMERICA, a corporation, and Herlong Sierra Homes, Inc., a corporation, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**Civ. No. 7250.**

United States District Court
N. D. California, N. D.

Feb. 19, 1957.

Landis & Brody, Sacramento, Cal., for plaintiffs.

Lloyd H. Burke, U. S. Atty., and Marvin D. Morgenstein, Asst. U. S. Atty., San Francisco, Cal., for defendant.

HALBERT, District Judge.

This is an action to recover damages from the United States of America under the provisions of the Federal Tort Claims Act, 28 U.S.C.A. § 2671 et seq., and § 1346(b) for the alleged loss of anticipated rental income from dwelling units constructed by plaintiffs adjacent to the Sierra Ordnance Depot, a military installation of the United States near Herlong, California. Plaintiffs allege that pursuant to a declared public policy of the United States to stimulate and encourage private construction of dwelling units to alleviate the acute housing shortages near federal military installations, Chapter 403, Public Law 211, 81st Congress, 1st Session, 63 Stat. 570, 12 U.S.C.A. § 1748 et seq., as amended, the Secretary of the Army on October 24, 1951, certified to the Federal Housing Administration that a need for housing facilities for base personnel of the Sierra Ordnance Depot existed. Plaintiffs further allege that thereafter the Federal Housing Administration, acting pursuant to statutory authority, 12 U.S.C.A. § 1702 et seq., as amended, agreed to insure mortgages in the amount of $1,113,-700 on 125 dwelling units to be constructed by plaintiff, Herlong Sierra Homes, Inc., and to insure mortgages in the amount of $1,261,000 on 150 dwelling units to be constructed by plaintiff, Builders Corporation of America, all of which said dwelling units were to be constructed adjacent to the Sierra Ordnance Depot. Plaintiffs further allege that the Commanding General of the Sixth Army issued an order to the Base Commander of the Sierra Ordnance Depot directing him to follow certain procedures set forth in the order for the general purpose of compelling base personnel to vacate the homes, in which they were then living, and become tenants of the plaintiffs "not later than September

1, 1954." It is alleged that the Base Commander failed and refused to carry out this order, and it is on this alleged failure and refusal that plaintiffs seek to found their two causes of action. The first cause of action is predicated on the theory that the Base Commander refused to carry out the aforementioned order with the intent to injure plaintiffs' business interests, and prevent plaintiffs from entering into an anticipated business relationship with the base personnel. The second cause of action is predicated on the theory that the Base Commander's alleged failure to carry out the order and plan submitted to him was negligence which directly caused plaintiffs' loss of rental income. Damages in the sum of $3,475,000 are sought on both causes of action.

Defendant has filed a motion to dismiss based, generally, on the contention that neither cause of action is cognizable under the provisions of the Federal Tort Claims Act, the alleged tortious conduct of the Base Commander having arisen in the course of exercising a "discretionary" function or duty, 28 U.S.C.A. § 2680(a). Defendant further contends, *inter alia*, that the first cause of action is grounded on the tort of interference with contractual relations within the meaning of Title 28 U.S.C.A. § 2680(h), and hence, is barred by the exclusion provisions of the Act. Defendant contends that the second cause of action fails to state a claim in negligence for the reason that defendant owed no duty to plaintiffs to protect plaintiffs from the type of loss which they suffered.

The alleged wrongful act of the Base Commander for which plaintiffs seek a recovery under their first cause of action appears to be the tort of "interference with prospective advantage" (Prosser on Torts, p. 745 [2d Ed.1955]), sometimes labeled "interference with prospective contracts or business relations". Masoni v. Board of Trade, 119 Cal.App.2d 738, 260 P.2d 205. Since Congress has decided not to surrender the immunity of the United States from tort actions based on interference with contract relations, 28 U.S.C.A. § 2680 (h), the essential issue which this Court must decide, then, is whether the tort of interference with prospective advantage or prospective contracts is properly includable within the aforementioned exception to the Tort Claims Act. It would seem to be quite illogical to conclude that Congress intended to exclude one tort from the operation of the Act, and, at the same time, *waive* the Government's immunity from actions sounding in a substantially identical tort; the distinction between the two being one of degree, only, in the elements necessary to establish liability.[1] Congressional intent need not be further pondered, however, for under the substantive tort law of California, by which we are bound in this case, cf. Massachusetts Bonding Co. v. United States, 352 U.S. 128, 77 S.Ct. 186, 1 L.Ed.2d 189, no distinction between "interfering with contract relations" and "interfering with prospective contract or business relations" is recognized except in the factual situations which are considered essential to the existence of liability for the sub-

---

1. Both the tort of interference with contract relations and the tort of interference with prospective contract or business relations involve basically the same conduct on the part of the tortfeasor. In one case the interference takes place when a contract is already in existence, in the other, when a contract would, with certainty, have been consummated but for the conduct of the tortfeasor. (See Prosser on Torts, p. 720 et seq., and p. 745 et seq. [2d Ed. 1955]). Rather than characterizing the two as separate torts, the more rational approach seems to be that the basic tort of interference with economic relations can be established by showing, *inter alia*, an interference with an existing contract or a contract which is certain to be consummated, with broader grounds for justification of the interference where the latter situation is presented.

stantive tort of "interference."[2]  Thus, in Masoni v. Board of Trade, supra, 119 Cal.App.2d at page 741, 260 P.2d at page 207, it was stated:

> "Actionable interference of this kind is not limited to inducing breach of an existing contract or other wrongful conduct but comprises also unjustifiably inducing a third person not to enter into or continue a business relation with another." (Citing the Restatement of Torts, § 766(a) and (b)).

(See also: Campbell v. Rayburn, 129 Cal.App.2d 232, 276 P.2d 671; Guillory v. Godrey, 134 Cal.App.2d 628, 286 P.2d 474; Wilson v. Loew's, Inc., 142 Cal. App.2d 183, 298 P.2d 152; and 28 Cal. Jur.2d 427, Interference, §§ 7 and 8).

Few federal cases have dealt with the exclusion of interference with contract relations from federal tort liability,[3] but the case of Fletcher v. Veterans Administration, D.C.E.D.Mich., 103 F.Supp. 654, provides a helpful analogy.  In that case plaintiff operated a school supported primarily by veteran enrollees, but the Veterans Administration, for undisclosed reasons, thereafter advised the veterans against enrolling in the school with the result that plaintiff was left with empty classrooms, and was forced to discontinue his operations.  The ensuing action against the Veterans Administration for "negligence" in causing the loss of existing and future business

opportunity was dismissed as an action based on interference with contract rights within the meaning of § 2680(h), Title 28 U.S.C.A.

█  In view of the foregoing authorities, this Court is of the opinion that the United States did not waive its immunity from the type of claim which plaintiffs assert by their first cause of action, hence, no useful purpose would be served by here ruling on defendant's contention that this cause of action is likewise barred under the "discretionary function" exception enunciated in § 2680(a), supra.

██  In order to recover damages on their second cause of action, based on negligence, it is essential that plaintiffs allege and prove that defendant owed them a duty to conform to a standard of conduct which would prevent the kind of injury which plaintiffs allegedly suffered.  This is the rule in California, Routh v. Quinn, 20 Cal.2d 488, 127 P.2d 1, 149 A.L.R. 215, and is likewise applicable to actions based on negligence under the Federal Tort Claims Act. Dalles City v. River Terminals Company, 9 Cir., 226 F.2d 100; Social Security Admin. Baltimore F.C.U. v. United States, D.C., 138 F.Supp. 639; Mid-Central Fish Co. v. United States, D.C., 112 F.Supp. 792, affirmed 8 Cir., 210 F.2d 263; and Anglo-American & Overseas Corp. v. United States, D.C., 144 F.Supp. 635.

---

2. Note 1, supra.

3. Only two have been found, Nicholson v. United States, 5 Cir., 177 F.2d 768, and Fletcher v. Veterans Administration, D.C., 103 F.Supp. 654. The Nicholson case held merely that an action between two parties to a contract for injuries caused by the negligence of one was not an action for interference with contractual relations. The Fletcher case is discussed in the main text.

Plaintiffs contend that the case of Oman v. United States, 10 Cir., 179 F. 2d 738, is determinative of the question. In that case, the Court permitted the plaintiff to maintain an action against the United States for damages arising out of the government's permitting third persons to invade plaintiff's exclusive-

ly granted grazing territory on the public domain. The principal question before the Court in that case was whether the action was barred by the discretionary function exception in Title 28 U.S.C.A. § 2680(a), the Court holding that the government agents had no discretion to pursue a course of conduct tantamount to a revocation of plaintiff's exclusive grant without employing the established procedure to effect such a revocation. The action clearly was not based on the tort of interference with contract relations, but was more closely akin to an action in the nature of trespass. With facts so materially different, the holding in the Oman case was clearly not addressed to the issue before the Court in the case at bar.

What the scope of duty is in any given case seldom admits of easy definition. Perhaps the most helpful analysis is tendered by Dean Prosser in his treatise on torts, where he states:

> "The statement that there is or is not a duty begs the essential question—whether the plaintiff's interests are entitled to legal protection against the defendant's conduct." (Prosser on Torts, p. 167 [2d Ed. 1955]).

Plaintiffs' contentions in this regard are based essentially on a theory that Congress, by enacting laws designed to encourage the construction by private businesses of dwelling facilities near military installations, intended to create a duty on the part of the commanding officers of such installations to provide the owners of such housing facilities with tenants so that their investment would be a profitable one. However, an analysis of the statutory provisions, 12 U.S.C.A. § 1748 et seq., and their legislative history, House Report No. 854, 81st Congress, 1st Session, June 20, 1949, U.S.Code Cong.Service 1949, p. 1757, yields a different conclusion. Of basic concern to Congress was the critical need for adequate housing and living facilities around vital defense installations and the possibility of serious consequences to personnel morale arising from undesirable living conditions. To implement the program designed to alleviate this situation, Congress determined that the desired results could best be obtained by the encouragement of the private construction industry to undertake the building projects. Such an undertaking for the Federal Government, it was decided, would be too costly and otherwise unfeasible. Government intervention was, hence, limited to assisting the private construction industry in obtaining the necessary financing by insuring their indebtednesses through the Federal Housing Administration. No duty, however, was placed on the Government to insure the financial success of the private projects; to the contrary, Congress acknowledged a duty only in developing the defense effort to its fullest potential, and recognized that the morale of defense personnel was an indispensable factor in bringing about the success of the program.

If plaintiffs are to rely on the existence of a statutory duty, it is essential that they show that the statute is designed for their benefit, or for those of a class of which they are members. Anglo-American & Overseas Corp. v. United States, supra; Social Security Admin. Baltimore F.C.U. v. United States, supra; Mid-Central Fish Co. v. United States, supra; and Routh v. Quinn, supra. No such showing is made by plaintiffs in this case.

Before a duty can be said to exist, even in the absence of statute, the plaintiff in a negligence action must show that his injury occurred as a result of the invasion by the defendant of a legally protectable interest. Plaintiff has alleged, at best, the deprivation of an expectancy only,[4] and while a definite business expectancy may be considered a protectable interest in a proper case, the Court has already concluded that the Tort Claims Act does not contemplate actions based on interference with business expectations. These fatal defects in the plaintiffs' complaint render the second cause of action likewise subject to a motion to dismiss.

For the reasons above set forth plaintiffs' complaint and each of the causes

---

4. The cases of Smith v. United States, D.C., 113 F.Supp. 131, and Oman v. United States, supra, note 3, are not helpful to plaintiffs' position in this connection. Both of these cases involve tangible, existing legal interests, and are addressed to the discretionary function exception to the Tort Claims Act. To hold that one who assists another in financing the construction of rental facilities owes a concomitant duty to the other (in the absence of statute or contract) to assist him in acquiring tenants would be to create a novel and heretofore unprecedented substantive tort liability for a private citizen as well as the government. This Court declines the invitation to create such a duty.

of action attempted to be set forth therein are, and each of them is, hereby dismissed. Let a judgment in favor of the defendant be entered herein on each of the causes of action attempted to be set forth in plaintiffs' complaint. Defendant will prepare and lodge with the Clerk of this Court all papers and documents necessary for the final disposition of this case.